IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOSEPH C. LONGWAY, d/b/a ) <br> LONGWAY BROADBAND SERVICES, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> vs. ) <br> ) <br> ) <br> THE SANBORN MAP COMPANY, ) <br> APPLIED GEOGRAPHICS, INC., ) <br> ) <br> Defendants. ) | CASE NO. 3:10-00896 <br> JUDGE TRAUGER/KNOWLES |

## REPORT AND RECOMMENDATION

On October 3, 2013, Judge Trauger entered an Order providing in relevant part:

> It is further **ORDERED** that this case is **RECOMMITTED** to the Magistrate Judge with the instruction that he rule on Sanborn's Motion to Dismiss (Docket No. 80) on the merits.

Docket No. 95.

Sanborn has filed a supporting Memorandum of Law (Docket No. 81), and Plaintiff has filed a Response in Opposition to the Motion to Dismiss (Docket No. 86). Sanborn has filed a Reply (Docket No. 87). The basis for Sanborn's Motion is that this action is barred by *res judicata* and *collateral estoppel*.

Plaintiff, who was proceeding *pro se* at the time, filed this action against Sanborn, Applied Geographics, Inc., and SM Baldwin Consulting, in the Circuit Court for Wilson County, Tennessee. Docket No. 1-1. Defendants subsequently removed the case to this Court. Docket No. 1. In his Complaint, Plaintiff avers that he and Defendants were "entered into a partnership

specifically geared for the Broadband Mapping and Planning Projects across the County [*sic*]."[1]
Docket No. 1-1, p. 2. Plaintiff further avers that several states submitted applications to the National Telecommunications and Information Administration, U.S. Department of Commerce, State Broadband Data and Development Grant Program, and that several of those states had issued public requests for proposals from firms interested in providing service as part of the states' applications for a grant of federal funds. *Id.*

With no further discussion of the facts underlying the Complaint, Plaintiff states:

> The Plaintiff alleges that the Defendants (Sanborn Map Company, SM Baldwin Consulting, and Applied Geographics) prematurely broke Promissory Estoppel agreements, Teaming agreements, and Non Disclosure Agreements. The Plaintiff is out actual damages and expenses of at least 6.5 million dollars. The Plaintiff has evidence from many US States that the Defendants have in-fact used the Plaintiff's work plan, slandered the Plaintiff, and used information without the Plaintiff's consent or prompt payment.

*Id.*

Approximately one month after the case was removed, Defendants filed Motions to Stay, or alternatively, to Dismiss. Docket Nos. 12, 14, 17. The basis of the Motions was that a "prior-filed, parallel case" was pending in state court in Colorado. Sanborn's supporting Memorandum provided slightly more background information about the nature of Plaintiff's claims in the case at bar:

> The dispute between Longway and Defendants stems from failed negotiations relating to broadband mapping bids Sanborn submitted to state governments applying for federal stimulus funds. Sanborn and Longway commenced discussions in August 2009 about Longway's potential assistance to Sanborn in

---

[1] While Plaintiff later filed an Amended Complaint (Docket No. 74), Judge Trauger thereafter ruled that the Amended Complaint was "of no force and effect" (Docket No. 95).

> connection with its bids, but Sanborn and Longway never reached an agreement on participation by Longway. Longway did not participate with Sanborn in any of the bids in which Sanborn was a successful bidder.

Docket No. 13, p. 1.

Sanborn described the history of the legal actions between itself and Longway as follows:

> [The instant] lawsuit is the second lawsuit filed by Longway against Sanborn in Tennessee. The first [Tennessee] lawsuit was filed by Longway on January 12, 2010 in the General Sessions Court for Wilson County, Tennessee and is now pending in the Circuit Court for Wilson County, Tennessee. . . . The First Tennessee Lawsuit concerns only a limited claim for $7362.00 that Longway seeks for certain services he claims he performed for Sanborn in September 2009 in connection with services Sanborn was providing to the State of Washington. Sanborn has denied Longway's claim in the First Tennessee Lawsuit.
>
> . . .
>
> After Longway filed the First Tennessee Lawsuit, Sanborn filed a declaratory judgment action in Colorado on May 13, 2010 seeking adjudication of the rights and obligations between Sanborn and Longway regarding the proposals Sanborn submitted to sixteen states, excluding the state of Washington (the "Colorado Lawsuit"). Sanborn's Complaint . . . specifically states that it does not seek relief regarding the subject matter of the First Tennessee Lawsuit. . . . Sanborn submitted proposals in sixteen other states (not including the state of Washington) and was the successful bidder in two of those states - Georgia and Oklahoma. Longway did not participate with Sanborn in its bids to either of those states.

*Id.*, p. 2-3.

Sanborn argued that the instant lawsuit is "duplicative of the Colorado Lawsuit, asserting essentially the same claims as Longway's counterclaims in the Colorado Lawsuit." *Id.*, p. 3. Sanborn argued that, as a practical matter, a resolution of the Colorado Lawsuit would effectively resolve all claims in the instant action. Sanborn, therefore, sought to have this Court stay consideration of the instant action, pending a decision in the Colorado Lawsuit.

Judge Trauger subsequently entered an Order noting that the Motions to Stay filed by all three Defendants were not opposed by Plaintiff, and they were granted. Docket No. 41. Defendant SM Baldwin Consulting was subsequently dismissed from this action. Docket No. 45. Thereafter, Plaintiff's counsel were permitted to withdraw. Docket Nos. 48, 49, 50, 51.

While the instant action was stayed in this Court, the Colorado Lawsuit proceeded to trial on March 31, 2011. On April 8, 2011, the Colorado court entered an order and judgment in favor of Sanborn and against Longway, as to each of Longway's counterclaims and as to Sanborn's request for declaratory judgment. Longway appealed parts of the ruling in the Colorado Lawsuit and, on January 3, 2013, the Colorado Court of Appeals affirmed the judgment of the lower court. Docket No. 57-1. The Mandate from the Colorado Court of Appeals was entered on February 28, 2013. Docket No. 57-2.

The stay of the instant action was subsequently lifted. Docket No. 70. Shortly thereafter, Sanborn filed the instant Motion to Dismiss asserting that the instant action is barred by the doctrines of *res judicata* and *collateral estoppel* as a result of the Colorado action.

The Court proceeds from the proposition that the preclusive effect of the Colorado Court's judgment is determined by the claim preclusion law of Colorado. *Marrese v. American Academy of Orthopedic Surgeons,* 470 U.S. 373, 380 (1985); 28 U.S.C. § 1738. As the Sixth Circuit has stated:

> Res judicata may bar any claims over which the federal courts have jurisdiction. . . . Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state.

*Abbott v. State of Michigan*, 434 F.3d. 324, 330 (6th Cir. 2007).

As Sanborn correctly argues, "res judicata holds that an existing judgment is conclusive

4

of the rights and the parties in any subsequent suit on the same claim. It bars relitigation not only of all issues actually decided, but of all issues that might have been decided." *State Engineer v. Smith Cattle, Inc.,* 780 P.2d 546, 549 (Colo. 1989)(internal quotation marks omitted). A party asserting *res judicata* must show: (1) that the underlying judgment is final; (2) that both suits involve the same subject matter; (3) that both suits involve the same claims for relief; and (4) that both suits involve the same parties, or parties in privity. *Cruz v. Benine,* 984 P.2d 1173, 1176 (Colo. 1999).

In a section of its Colorado complaint headed "Nature of the Case," Sanborn stated:

> 5. This case involves a case for declaratory relief to determine the rights, obligations, and liabilities of Sanborn with respect to Joseph C. Longway and Longway Broadband Services in connection with broadband mapping services and planning, proposals, and projects with various states.

Docket No. 13-2, p. 2.

Sanborn's complaint cited the American Recovery and Reinvestment Act of 2009, the Broadband Data Improvement Act, and a "Notice of Funds Availability," stating that several states had submitted applications to the National Telecommunications and Information Administration, the U.S. Department of Commerce, State Broadband Data and Development Grant Program, and that several of those states had issued public requests for proposals from firms interested in providing services as part of the state's application for a grant for federal funds. *Id.* Sanborn averred that it submitted bids to seventeen states in response to requests for proposals from those states "concerning broadband mapping and planning services for grants authorized under the Recovery Act and BDIA." *Id.* The complaint further averred that, while Sanborn and Longway had discussed the possibility of entering into possible teaming agreements

5

for state broadband mapping projects, they did not reach agreement on, or enter into, any such teaming agreements. *Id.*, p. 3. Sanborn further alleged that, for those states in which it was not the successful bidder, it had no obligations or liabilities to Longway. *Id.*, p. 4-5. For those states in which Sanborn was the successful bidder, Sanborn alleged that it did not agree to include Longway and did not include him in Sanborn's bids for those states. *Id.* Sanborn averred that, nevertheless, Longway was claiming that it owed him amounts in excess of $500,000 for services he claimed he provided or for agreements he claimed he entered into with Sanborn in connection with broadband mapping services. *Id.*, p. 6. Sanborn sought declaratory relief in the Colorado action.

Longway filed an answer in the Colorado Lawsuit. Docket No. 13-3. Included in that answer was a section headed, "Longway's Claims," in which Longway claimed that Sanborn owed him actual damages of $6.5 million. *Id.*, p. 4-5. Longway also sought a "judgment" that Sanborn and Longway "do have an agreement in place and [Sanborn] has [*sic*] liable for those damages caused there [*sic*] negligence in violation of NDA, Teaming agreements, Promissory Estoppel, Quasi-Contract, business agreements." Docket No. 13-3, p. 5.

Based on the foregoing, there is no question that the claims raised by Longway in the case at bar either were presented to the Colorado Court or could have been presented to the Colorado Court in the prior Colorado action. Additionally, Sanborn has satisfied the four requirements referred to above for asserting a defense of *res judicata* under Colorado law.

In his Response to the instant Motion, Longway merely states legal conclusions, some of which are not supported by facts, and some of which are essentially irrelevant. Docket No. 86, p. 4-6. He argues that Sanborn was the only Plaintiff in the Colorado action, and that Applied

6

Geographics and SM Baldwin did not give depositions or testify in that case. *Id.* He argues that the "laws of Tennessee" are applicable. *Id.* These matters, even if correct, do not support his position that *res judicata* is inapplicable. He further argues that Sanborn does not meet the four basic requirements of *res judicata*, but he does not explain how or why that is the case.

For the foregoing reasons, the undersigned recommends that the instant Motion to Dismiss (Docket No. 80), be GRANTED, and that the Plaintiff's claims against Sanborn be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge