IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOSEPH C. LONGWAY, d/b/a )
LONGWAY BROADBAND SERVICES, )
)
      Plaintiff, )
)
)
vs. ) CASE NO. 3:10-cv-00896
) JUDGE TRAUGER/KNOWLES
)
THE SANBORN MAP COMPANY, )
APPLIED GEOGRAPHICS, INC., )
)
      Defendants. )

## REPORT AND RECOMMENDATION

This matter is before the Court upon Defendant Applied Geographics, Inc.'s ("App Geo" or "Defendant") Motion to Dismiss. Docket No. 103. Defendant has contemporaneously filed a supporting Memorandum of Law with Exhibits. Docket No. 104. Defendant argues that the instant action "arises from the same set of underlying facts as a previously concluded lawsuit, and [Plaintiff's] claims are identical to the claims he asserted and lost in the previous lawsuit," such that Plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel. *Id.* Defendant also argues that Plaintiff's allegations "otherwise fail to state a claim" upon which relief can be granted. *Id.*

Plaintiff originally filed this action against The Sanborn Map Co. ("Sanborn"), Applied Geographics, Inc. ("App Geo"), and SM Baldwin Consulting ("SMB"), in the Circuit Court for Wilson County, Tennessee. Docket No. 1-1. A brief explanation of the allegations / responses in the previous lawsuit, which was filed in Colorado, and the relationship between Plaintiff, App

Geo, and Sanborn will be helpful to an understanding of this action.

Sanborn submitted bids to receive government contracts for broadband mapping services in several states. When preparing bids for Indiana, Montana, and Nebraska, Sanborn entered into negotiations with Plaintiff about possibly working together, should Sanborn be awarded those contracts. As part of those negotiations, Sanborn and Plaintiff entered into a Confidentiality Agreement. Sanborn was not awarded the contracts for Indiana, Montana, or Nebraska, and did not receive subcontract work from the winning bidders in those states. Accordingly, Sanborn did not enter into any agreement with Plaintiff.

Sanborn subsequently submitted bids in response to various requests for proposals from approximately seventeen states. App Geo participated in some of those bids, but had no independent dealings or agreements with Plaintiff. Sanborn received contracts from Georgia and Oklahoma, but was not the successful bidder on any other state. Sanborn was, however, hired by other successful bidders to do subcontractor work on the broadband mapping projects in Oregon, Connecticut, and Florida.

Sanborn filed a declaratory judgment action in Colorado, seeking adjudication of its rights relative to Plaintiff with respect to bids in various states. Plaintiff counterclaimed against Sanborn, alleging "violation of the Tennessee Consumer Protection Act 47.19.109, violation(s) of NDA, production of proprietary material without consent, trade secret violation(s), slander, and failure to make any or prompt payment," as well as "Promissory Estoppel agreement and Quasi-contract."

While the Colorado action was pending, Plaintiff filed the instant case in Wilson County. Defendants subsequently removed it to this Court. Docket No. 1. Approximately one month

later, Defendants filed Motions to Stay, or alternatively, to Dismiss (Docket Nos. 12, 14, 17), based on the "prior-filed, parallel case" pending in state court in Colorado. Judge Trauger subsequently entered an Order noting that the Motions to Stay filed by all three Defendants were not opposed by Plaintiff, and they were granted. Docket No. 41. Defendant SMB was subsequently dismissed from this action for lack of personal jurisdiction. Docket No. 45. Thereafter, Plaintiff's counsel were permitted to withdraw.[1] Docket Nos. 48, 49, 50, 51.

While the instant action was stayed in this Court, the Colorado Lawsuit proceeded to trial on March 31, 2011. On April 8, 2011, the Colorado court entered an order and judgment in favor of Sanborn and against Longway, as to each of Longway's counterclaims and as to Sanborn's request for declaratory judgment. Longway appealed parts of the ruling in the Colorado Lawsuit and, on January 3, 2013, the Colorado Court of Appeals affirmed the judgment of the lower court. Docket No. 57-1. The Mandate from the Colorado Court of Appeals was issued on February 28, 2013. Docket No. 57-2.

The stay of the instant action was lifted on March 27, 2013. Docket No. 70. On May 24, 2013, Defendant Sanborn filed a Motion to Dismiss based on res judicata and collateral esoppel. Docket Nos. 80. That Motion was ultimately granted, and Sanborn was terminated as a party, leaving Applied Geographics, Inc., as the only remaining Defendant in this action. Docket No. 101. App Geo filed the instant Motion on November 13, 2013. Docket No. 103.

Plaintiff has filed a Response (Docket No. 112) and a sealed Supplemental Response (Docket No. 114). Plaintiff's Supplemental Response contains the terms of Plaintiff's confidential settlement agreement with now-former Defendant Sanborn. Docket No. 114. The

---

[1] After the withdrawal of his counsel, Plaintiff has continued to proceed pro se.

3

settlement agreement does not apply directly to Defendant App Geo.

Plaintiff essentially argues that Defendant's Motion inappropriately relates to his original Complaint because any "pleadings and responses prior to the Amended Complaint (Docket No. 74) are mute [*sic*]." Docket No. 112. Plaintiff also maintains that Defendant should answer his Amended Complaint. *Id.* Plaintiff responds that res judicata does not protect App Geo because it was not a defendant in Colorado or Wilson County, and Plaintiff notes that App Geo "did not give any deposition and/or trial testimony in either [previous] action." *Id.*, p. 5.

Plaintiff concedes that the previous Colorado and Tennessee cases are final with regard to (now-former Defendant) Sanborn, but argues that he is "not reintroducing settled issues [] because App Geo was not a party to those issues." *Id.*, p. 6. Plaintiff contends that he has introduced new claims with regard to App Geo that were not introduced in either of the previous Colorado and Tennessee actions. *Id.* Plaintiff concedes that this suit involves the same core of operative facts related to the interactions between Longway and Sanborn over the broadband mapping bids, but contends that "[t]his is only part of the issues raised by Longway in the Amended Complaint as it doesn't address App Geo using Longway's protected and confidential information and unjustly enriching themselves." *Id.*

Plaintiff also asserts that the claims for relief are not the same in the instant action as they were in the Colorado and Tennessee cases, as those cases did not "mention the use and distribution of Longway's work, company secrets, and trade secrets that were used in the administration of the action doing the work in the states App Geo was the Contractor." *Id.* Plaintiff contends that while "App Geo may have had an 'interest' in the case," it "was not a 'party' to the Colorado or Tennessee case." *Id.* Plaintiff further contends that App Geo did not

4

hire counsel to protect its interests in the prior cases. *Id.*, p. 7.

Plaintiff additionally argues that his claims are not barred by the doctrine of collateral estoppel because "App Geo was not present, provided not [*sic*] testimony, and was not named a party in either action." *Id.* Plaintiff notes that App Geo has been named a party only in this action, thus, there has been no opportunity to litigate claims and allegations against App Geo, and no actions have yet been levied against App Geo. *Id.*, p. 8. Plaintiff argues that "[a]ny attempt by App Geo to tie its self [*sic*] to litigation that were not related to App Geo should be looked on the by the court as **MUTE** [*sic*]"; as "App Geo had zero liability in either action in Tennessee or Colorado." *Id.* (capitalization and emphasis original).

With leave of Court (Docket No. 111), Defendant has filed a Reply, maintaining that Plaintiff did not rebut its res judicata or collateral estoppel arguments. Docket No. 113. With regard to its res judicata defense, Defendant argues that: (1) Plaintiff did not address the issue of whether the Colorado Action is final for res judicata purposes; (2) Plaintiff's "admission that both cases involved 'broadband mapping services,' together with his prior admissions that both lawsuits were similar, is dispositive on the 'identity of subject matter'" element; (3) Plaintiff asserted or could have asserted identical claims for consumer protection act violations, breach of contract and corollary unjust enrichment claims, and claims for trade secrets violations in both lawsuits; and (4) Plaintiff admits that Defendant "had an interest" in the Colorado action, and "the law affords a res judicata defense to non-parties in privity with an actual party to a final judgment." *Id.* Defendant summarizes its position:

> This Court previously ruled that the res judicata doctrine precludes
> the Plaintiff's claims against Sanborn. (DE#100, DE#101).
> Applied Geographics now asserts the same defense as there is no
> dispute that it was in privity with Sanborn. The Court's ruling on

5

> Sanborn's motion applies equally to Applied Geographics, and
> Applied Geographics respectfully requests that the Court dismiss
> Plaintiff's claims in their entirety with prejudice.

*Id.*, p. 4.

With regard to its collateral estoppel argument, Defendant notes that the Colorado action was a final judgment and that Plaintiff does not challenge that non-parties in privity with an actual party may assert a collateral estoppel defense. *Id.*, p. 3. Defendant argues, "[w]ith the Colorado Action now concluded, the case at bar has 'become unnecessary,'" as collateral estoppel precludes relitigation of Plaintiff's claims. *Id.*, p. 4.

As an initial matter, although Plaintiff's arguments set forth in his Response to the instant Motion center around allegations raised in his Amended Complaint, Judge Trauger's Order entered on October 3, 2013, rendered the Amended Complaint "of no force and effect." *See* Docket No. 95. Accordingly, Plaintiff's original Complaint remains the operative Complaint in this action, and Plaintiff's arguments relating to allegations contained in his Amended Complaint do not bear on the instant Motion.

In his Complaint in the instant case, Plaintiff avers that he and Defendants were "entered into a partnership specifically geared for the Broadband Mapping and Planning Projects across the County [*sic*]." Docket No. 1-1, p. 2. Plaintiff further avers that several states submitted applications to the National Telecommunications and Information Administration, U.S. Department of Commerce, State Broadband Data and Development Grant Program, and that several of those states had issued public requests for proposals from firms interested in providing service as part of the states' applications for a grant of federal funds. *Id.*

With no further discussion of the facts underlying the Complaint, Plaintiff states:

> The Plaintiff alleges that the Defendants (Sanborn Map Company, SM Baldwin Consulting, and Applied Geographics) prematurely broke Promissory Estoppel agreements, Teaming agreements, and Non Disclosure Agreements. The Plaintiff is out actual damages and expenses of at least 6.5 million dollars. The Plaintiff has evidence from many US States that the Defendants have in-fact used the Plaintiff's work plan, slandered the Plaintiff, and used information without the Plaintiff's consent or prompt payment.

*Id.*

As relates to the instant Motion, it is important to note that Plaintiff's original Complaint levies no specific independent allegations regarding any direct dealings with App Geo; rather, the allegations of Plaintiff's original Complaint center around his dealings with Sanborn. *See* Docket No. 1-1.

It is undisputed that App Geo was not a party to the Colorado action. Accordingly, in order to prevail on its res judicata and/or collateral estoppel arguments, as will be discussed in greater detail below, App Geo must have been in privity with Sanborn in the prior case.

The Court proceeds from the proposition that the preclusive effect of the Colorado Court's judgment is determined by the claim preclusion law of Colorado. *Marrese v. American Academy of Orthopedic Surgeons,* 470 U.S. 373, 380 (1985); 28 U.S.C. § 1738. As the Sixth Circuit has stated:

> Res judicata may bar any claims over which the federal courts have jurisdiction. . . . Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state.

*Abbott v. State of Michigan*, 434 F.3d. 324, 330 (6th Cir. 2007).

"Res judicata holds that an existing judgment is conclusive of the rights and the parties in any subsequent suit on the same claim. It bars relitigation not only of all issues actually decided,

but of all issues that might have been decided." *State Engineer v. Smith Cattle, Inc.,* 780 P.2d 546, 549 (Colo. 1989)(internal quotation marks omitted). A party asserting res judicata must show: (1) that the underlying judgment is final; (2) that both suits involve the same subject matter; (3) that both suits involve the same claims for relief; and (4) that both suits involve the same parties, or parties in privity. *Cruz v. Benine,* 984 P.2d 1173, 1176 (Colo. 1999).

As discussed in the undersigned's Report and Recommendation recommending that Sanborn's Motion to Dismiss (Docket No. 80) be granted, Sanborn satisfied the four requirements referred to above for asserting a defense of res judicata under Colorado law. Docket No. 100. The question now before the Court, therefore, is whether App Geo has satisfied those same requirements - in particular, whether it has satisfied the final element: privity with Sanborn.

With regard to the requisite elements of its res judicata defense, there is no question that the Colorado Court of Appeals' order is a final decision on the merits. There is also no question that both suits involve the same underlying subject matter (i.e. the relationship / interactions between Plaintiff, Sanborn, and by extension, App Geo, in their attempts to secure government contracts requiring broadband mapping services). Furthermore, there is no question that Plaintiff now attempts to relitigate claims set forth in the Colorado action or claims that arose from "all or any part of the transaction or series of connected transactions, out of which the [initial] action arose," that could have been brought in the Colorado action.

With respect to the final element, in Colorado, privity requires "both a substantial identity of interests and a working or functional relationship . . . in which the interests of the non-party are presented and protected by the party in the litigation." *Cruz v. Benine*, 984 P.2d

8

1173, 1176 (Colo. 1999). As noted above, App Geo was not a party to the Colorado action, but did participate in some of the bids that Sanborn independently prepared for subsequent states; it had no direct dealings with Plaintiff. Because Sanborn and App Geo worked together on several bids for various government broadband mapping contracts, they share an identity of interests and a working relationship. Additionally, because of that identity of interests and working relationship and the nature of Plaintiff's claims, Sanborn represented the same legal rights and positions that App Geo would have taken against those claims, and the interests of App Geo were presented and protected by Sanborn in the Colorado action. Indeed, Plaintiff levied his allegations against App Geo solely "*via its participation in the partnership*" with Sanborn; Plaintiff levied no independent allegations against App Geo. *See* Docket No. 74. For the reasons discussed above, App Geo has established that it is in privity with Sanborn. App Geo has, therefore, established the four requisite elements of its res judicata defense.[2]

Plaintiff's arguments raised in his Response and recounted above simply do not support his position that App Geo cannot establish res judicata and/or collateral estoppel.

For the foregoing reasons, the undersigned recommends that the instant Motion to Dismiss (Docket No. 104), be GRANTED, and that Plaintiff's claims against Applied Geographics be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have

---

[2] Because App Geo has established that Plaintiff's claims are barred by the doctrine of res judicata, the undersigned will not separately analyze its collateral estoppel arguments.

9

fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge